(69 App. Div. 433.)

FLYNN v. CITY OF NEW YORK.

CASSIN v SAME.

(Supreme Court, Appellate Division, Second Department. March 7, 1902.)

MUNICIPAL CORPORATIONS — OFFICERS — FIRE DEPARTMENT — COMPENSATION — HOW DETERMINED.

Under charter of Brooklyn (Laws 1888, c. 583), tit. 13, § 6, providing that the compensation of the uniformed members of the fire department should be fixed by the board of estimate, and not less than the salaries then paid to such members, nor greater than certain specified rates for members of the grades specified therein, where persons were thereafter appointed to offices in such department which were not named in such act they were entitled to receive such compensation as was fixed from time to time by such board, and such compensation could not be reduced or changed by the fire commissioner.

Appeals from judgment on report of referee.

Actions by James H. Flynn against the city of New York and Canice Cassin against the same. From judgments for plaintiffs for portions of their demands, all parties appeal. Modified.

See 66 N. Y. Supp. 1131.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, and HIRSCHBERG, JJ.

Thomas F. Magner, for plaintiffs.

William J. Carr, for respondents.

WILLARD BARTLETT, J. The plaintiff Cassin was appointed an inspector in the uniformed force of the fire department of the city of Brooklyn on October 4, 1888. The plaintiff Flynn was appointed an assistant inspector in the same force on November 12, 1891. Both these appointments were made after chapter 583 of the Laws of 1888, being the last charter of the city of Brooklyn, went into effect. Title 13 of that charter relates to the department of fire, and in section 6 provides as follows:

"The annual pay or compensation of the uniformed members of the department shall be fixed by a majority of all the members of the board of estimate of the city of Brooklyn, and shall not be less than the salaries now paid to said members, and not greater than the following, namely: For firemen of the first grade at a rate not to exceed $1,200 per annum; for firemen of the second grade at a rate not to exceed $1,100 per annum; for firemen of the third grade at a rate not to exceed $1,000 per annum."

There are further provisions empowering the board of estimate to fix the pay of bell ringers and engineers of steamers and veterinary surgeons. No mention is made of inspectors or assistant inspectors. Cassin was the first inspector ever appointed, and Flynn was the first assistant inspector, as appears from the referee's findings of fact. It seems to be conceded that both of the plaintiffs were members of the uniformed force of the Brooklyn fire department. The board of estimate fixed the salary of Cassin at $3,000 a year and of Flynn at $2,000 a year. In 1894 the fire commissioner undertook to reduce Cassin's salary to $1,700, and Flynn's to $1,300. In these suits the plaintiffs have recovered the difference between the lessened compensation which was paid to them by reason of this reduction by order of the fire commissioner and the compensation originally fixed by the board of estimate. It appears, however, that in 1895 the board of estimate allowed Cassin $2,000 and Flynn $1,300 a year, and in 1896 and in 1897 allowed them, respectively, $1,700 and $1,300.

I think that the clause which I have quoted from section 6 of title 13 of the Brooklyn charter clearly empowered the board of estimate to fix the annual pay or compensation of these new officers, and that prohibition against fixing such pay or compensation at a lower rate than salaries "now paid to said members" could have no application to the offices of inspector and assistant inspector, which were then nonexistent. I do not think we should apply to the uniformed members of the fire department· the general provision in the charter empowering the officer or officers at the head of any department to appoint or remove his or their clerks or assistants and other subordinates and fix their salaries, when we find in the charter a special provision empowering the board of estimate to fix the pay or compensation of such uniformed members. It seems to me that the special provision should control. If I am correct in this, the measure of compensation to which these plaintiffs were entitled is furnished by the several resolutions of the board of estimate in regard to their pay, and the result will be to entitle them to recover at the rates originally fixed by the board of estimate until those rates were reduced by the board, and after such reduction at the reduced rates. In other words, I think that the pay or compensation of uniformed members of the department who were officers not specially mentioned in section 6 of title 13 of the charter was left wholly under the control of the board of estimate, by which such pay or compensation might be increased or reduced as the needs of the service should demand.

The judgments appealed from should therefore be modified so as to reduce the amount recovered by each plaintiff by deducting therefrom any sum awarded to him for periods subsequent to the 1st day of January, 1895, and, as thus modified, should be affirmed, without costs of this appeal to either party. All concur.